## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| KATRINA McLAUGHLIN, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> vs. <br><br> JB7, LLC, <br><br> Defendant. | Case No. 1:19-cv-23748 |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Katrina McLaughlin, individually and on behalf of all others similarly situated ("the Class"), brings this Class Action Complaint against Defendant JB7, LLC ("JB7") based upon JB7's misrepresentations to consumers concerning its Physician's Choice line of collagen peptides products.

### INTRODUCTION & BACKGROUND FACTS

1.  This is a class action on behalf of purchasers of Defendant JB7's Physician's Choice Collagen Peptides ("the Product"), based upon JB7's inaccurate and misleading reporting—both in advertising and on the Product's label and packaging—regarding the percent of the Daily Value of protein that the Product purportedly provides.

2.  JB7's misrepresentations cost any given consumer relatively little money; but JB7 has profited a few dollars at a time based upon its deceptive marketing of the Products. This case exemplifies why the class action procedure was adopted.

3.  In short, JB7 manufactures, markets, advertises, distributes, and sells the Product, which JB7 touts as "the ultimate sports and post workout recovery protein."[1]

4.  JB7 claims (on the Product label) that its Physician's Choice Collagen Peptides provides 12% the Daily Value of protein with each serving.[2]



5.  Defendant's Product is comprised of "Hydrolyzed Collagen I & III (Bovine)" (i.e., collagen from beef) and a digestive enzyme blend.[3]

6.  The collagen in the Product—and not the digestive enzyme blend—is its source of protein reported on the label.

---

[1] https://physicianschoice.com/products/collagen-peptides?gclid=EAIaIQobCh MI8eid8q6y5AIVwZyzCh0qjwabEAQYASABEgJSBfD_BwE ("What is Collagen?")

[2] Image sourced from physicianschoice.com/products (yellow highlighting added).

[3] Collagen is a structural protein found in various connective tissues such as tendons, ligaments, and skin. It also is found in blood vessels, the gut, intervertebral disks and in muscle tissue. It consists of amino acids bound together to form fibrils. Hydrolyzed collagen is another word for gelatin (also known as collagen hydrolysate and collagen peptides).

7.  All collagen, including the collagen in the Product, lacks one of the nine essential amino acids (tryptophan) and thus collagen does not provide a complete protein.[4]

8.  According to the Food and Drug Administration ("FDA") testing methodology for protein content and reporting of Daily Value percentages, hydrolyzed collagen has a protein Daily Value percentage of zero because it is an incomplete protein.

9.  If the Product label reflected measurements made in accordance with federal regulations concerning the federally mandated nutrition panel (aka the "Supplement Facts" panel), the protein Daily Value that the Product provides would be listed as zero (or left blank); but JB7 inaccurately reports that the Product provides 12% of the Daily Value for protein, as seen above.

10.  JB7's label claim violates federal and parallel state regulations regarding label claims for protein Daily Value, rendering the Product's protein content claims false and misleading.

11.  As noted by the California Supreme Court: "Simply stated: labels matter. The marketing industry is based on the premise that labels matter, that consumers will choose one product over another similar product based on its label and various tangible and intangible qualities…."[5]

---

[4] Amino acids are organic compounds that combine to form proteins. The nine "essential" amino acids are those that the human body cannot produce on its own and therefore must come from food or supplements. A "complete protein" contains all nine essential amino acids. An "incomplete protein" does not. There is a tenth amino acid that is essential before adulthood (arginine). The nine essential amino acids for adults are: histidine, isoleucine, leucine, lysine, methionine, phenylalanine, threonine, tryptophan, and valine.

[5] *Kwikset v. Superior Court*, 246 P3d 877, 889 (Cal. 2011) (emphasis added).

12.   Reporting a protein DV of zero (or blank) not only is accurate but is feasible as demonstrated by the fact that JB7's competitors do so.[6,7,8]





---

[6] Sports Research Collagen Peptides (Hydrolyzed Type I and III Collagen). Image sourced from https://www.vitaminshoppe.com/p/collagen-peptides-16-oz-powder/sc-1103 (yellow highlighting added).

[7] Vitamin Shoppe Collagen Peptides Powder (Hydrolyzed Type I and III Collagen). Image sourced from https://www.vitaminshoppe.com/p/collagen-peptides-powder-7-oz-powder/vs-4122?mr:trackingCode=D8188796-0DBA-E911-8102-00505694403D&mr:referralID=NA&sourceType=sc&source=SHOP&acqsource=adlucent&utm_source=Shopping&utm_medium=CSE&utm_campaign=The%20Vitamin%20Shoppe&utm_content=VS-4122&adlpxid=pla;299328552456;283055589310;c;9011657;placeholder;2145605;pla;local;383&gclid=EAIaIQobChMItq-Yo-u05AIVBI3ICh3wvQlREAQYASABEgJGuPD_BwE (yellow highlighting added).

[8] Vital Proteins Collagen Peptides. Image sourced from https://www.amazon.com/Vital-Proteins-Collagen-Peptides-Pasture-Raised/dp/B00K6JUG4K?th=1 (yellow highlighting added).

13.   JB7's misrepresentations have damaged Plaintiff and the Class and require restitution and injunctive relief to address past, present, and future harm. Damages not only would make JB7's customers whole, but would ensure that misleading marketing claims do not reap JB7 unwarranted economic gain, which either disadvantages competitors who play by the rules or incentivizes them to break the law—as JB7 has—in order to compete.

14.   Reporting a protein Daily Value of zero (or a blank, as illustrated above) would not result in a Product label that is inconsistent with federal requirements for the labeling of dietary supplements; indeed, it would conform the label to federal requirements.

15.   Neither an award of damages nor the injunctive relief sought in this action would serve as an obstacle to the accomplishment and execution of applicable federal requirements.

## PARTIES

16.   Plaintiff Katrina McLaughlin is and was at all relevant times a citizen and domiciliary of Miami, Florida, which is located in this District and Division.

17.   Defendant JB7, LLC, is a Colorado for-profit limited liability company with its principal place of business in Westminster, Colorado. It may be served with process through its registered agent: Robert B. Bliss, 1099 18th Street, Suite 2600, Denver, CO 80202.

## JURISDICTION AND VENUE

### Subject Matter Jurisdiction.

18.   This Court has original subject matter jurisdiction over this action pursuant to CAFA, Pub. L. 109-2, 119 Stat. 4 (codified in scattered sections of

Title 28 of the *United States Code*), under 28 U.S.C. § 1332(d), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [that] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

19.   Plaintiff is diverse from Defendant and Plaintiff seeks to represent other Class members who are diverse from Defendant.

20.   The matter in controversy exceeds $5,000,000.00 in the aggregate, exclusive of interest and costs and "the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. *See* 28 U.S.C. § 1332(d)(5)(B).

**Personal Jurisdiction (Specific).**

21.   This Court has specific personal jurisdiction over Defendant JB7 because this action arises out of and relates to JB7's contacts with this forum.

22.   JB7 conducts substantial business in the State of Florida, including in this District.

23.   JB7 knowingly directed the Product through the stream of commerce into this District. JB7 has advertised and marketed within this District through sales representatives, through the wires and mails, and via its own e-commerce website[9] and third-party e-commerce websites through which residents of this District have purchased the Product.[10]

---

[9] https://physicianschoice.com/products/collagen-peptides

[10] For example, JB7 maintains a dedicated page at Amazon.com where the Product can be purchased: https://www.amazon.com/stores/node/18206035011?encoding=UTF8&field-lbr_brands_browse-bin=Physician%27s%20CHOICE&ref_=bl_dp_s_web_18206035011.

24.   JB7 knowingly directs electronic activity and ships the Product into this District with the intent to engage in business interactions and it has in fact engaged in such interactions, including the resultant sale of the Product to Plaintiff.

25.   JB7 sold the Product to retailers in this District for the purpose of making the Product available for purchase by consumers in this District.

26.   Plaintiff's losses and those of other Class members were incurred in this District.

**Venue.**

27.   Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

28.   Defendant caused the Product to be offered for sale and sold to the public, including Plaintiff, in this District. Plaintiff purchased the Product in this district and incurred her losses in this District. Likewise, other Class members purchased the Product in this District.

29.   Venue is proper pursuant to 28 U.S.C. § 1391(c)(2) because this Court maintains personal jurisdiction over Defendant.

## ADDITIONAL FACTUAL ALLEGATIONS

**Federal Law & Defendant's Misrepresentations.**

30.   At all relevant times, JB7 made and continues to make affirmative misrepresentations regarding the Product, which it manufactures, markets, packages, distributes, and sells.

31.   Defendant advertised, marketed, packaged, distributed, and sold its Product to Plaintiff and other consumers with the false representation that

the Product provides a specific percentage of the Daily Value of protein per serving.

32.   Protein is comprised of amino acids, which are linked to one another in long chains. The sequence of amino acids determines each protein's unique structure and its specific function.

33.   Not all dietary proteins are the same, as they are made up of different combinations of either essential or non-essential amino acids. A complete protein is one that contains all nine essential amino acids, as opposed to an incomplete protein which is missing one or more essential amino acids.[11]

34.   JB7 makes protein claims on the Product label and in marketing the Product. For example, the label claims it is "5X more effective" and is "Formulated for hair, nails, skin [and] bones." Marketing claims include touting the Product as "the ultimate sports and post workout recovery protein," and "Just having extra protein in your life is so important, especially for busy moms."[12]

35.   When a dietary supplement manufacturer makes protein claims such as those made by JB7, the percent of the Daily Reference Value ("DRV") is required.[13]

---

[11] *Nutrient Facts Label: Protein*, U.S. FOOD AND DRUG ADMINISTRATION, https://www.accessdata.fda.gov/scripts/InteractiveNutritionFactsLabel/factsheets/Protein.pdf.

[12] https://physicianschoice.com/products/collagen-peptides?gclid=EAIaIQobChMI8eid8q6y5AIVwZyzCh0qjwabEAQYASABEgJSBfD_BwE ("What is Collagen?" & "Videos" section.)

[13] *Guidance for Industry: A Food Labeling Guide (7. Nutrition Labeling; Questions G I through P8)*, U.S. FOOD & DRUG ADMINISTRATION, https://www.fda.gov/media/81606/download at 30.

36. To determine the percent of the Daily Value of protein within a product, a manufacturer is required under the Food, Drug, and Cosmetic Act ("FDCA") and FDA's implementing regulations to test in accordance with the Protein Digestibility-Corrected Amino Acid Score (PDCAAS).[14]

37. The PDCAAS is the preferred method for the measurement of the protein value in human nutrition and has been adopted by the Food and Agriculture Organization of the United Nations, the World Health Organization, and the FDA.

38. Federal law requires JB7 to report the percent of the Daily Value of protein using the PDCAAS.[15]

39. The PDCAAS measures protein quality based on human *essential* amino acid requirements and the human body's ability to digest those amino acids. An amino acid is classified as being "essential" if the human body cannot manufacture the amino acid itself, but instead relies upon the consumption of the amino acid through an individual's diet. For example, tryptophan, commonly associated with turkey meat, is an essential amino acid used by the human body to create serotonin, melatonin, and vitamin B6. However, collagen products, including the Product at issue here, lack tryptophan.

---

[14] *Nutrition labeling of food*, 21 C.F.R. § 101.9(j)(6) (requiring dietary supplements to be labeled in compliance with 21 C.F.R. § 101.36); *Nutrition labeling of dietary supplements*, 21 C.F.R. § 101.36(b)(2)(iii) (requiring listing of the percent of the Daily Value of protein as calculated according to 21 C.F.R. § 101.9(c)(7)(ii)); *Nutrition labeling of food*, 21 C.F.R. § 101.9(c)(7)(ii) (requiring the "corrected amount of protein (gram) per serving" to be calculated by multiplying the actual amount of protein by amino acid score corrected for protein digestibility (i.e., the PDCAAS)).

[15] *Id.*

40.   The PDCAAS compares protein to a standard amino acid profile and rates the protein a score from 0.0–1.0. A score of 1.0 indicates maximum amino acid digestibility, and 0.0 means that the protein is not digestible or lacks essential amino acids that provide the human body with the benefits associated with protein. Common protein supplements (whey, casein, and soy) all receive 1.0 scores. Meat and soybeans (0.9), vegetables and other legumes (0.7), and whole wheat and peanuts (0.25-0.55) all provide diminished protein digestibility.

41.   To determine the percent of the Daily Value ("% DRV") of protein, the amount of total protein grams within a product is first calculated by multiplying the PDCAAS score with the proteins per serving. (Protein grams = [protein per serving x PDCAAS]). Then, the total of protein by grams is divided by 50, and then multiplied by 100. (%DRV = [(Protein grams / 50) x 100]).

42.   For example, in determining the % DRV of soybeans within a product containing 3 grams per serving, the protein grams would be [3g x PDCAAS of 0.9], which is 2.7. Then [(2.7 protein grams/50) x 100], which results in a % DRV of 5.4%.

43.   PDCAAS is used to ensure that consumers are informed about the actual "quality" of protein within a product, and the amount of essential amino acids the consumer is actually receiving from the product.

44.   JB7 claims on the Product's label that the each serving provides 6g of protein and 12% of the Daily Value of protein. Defendant also claims its blend "break[s] down proteins for enhanced digestion making Physician's Choice collagen 5x more effective!"

45.    However, the Product has a PDCAAS of zero because it is an incomplete protein due to its lack the essential amino acid tryptophan.

46.    Assuming the Product does have 6 grams of proteins per serving as JB7 claims, the total protein grams of the Product would be zero (11g x PDCAAS of 0). Therefore, the % DRV [(0 protein grams/50) x 100] also is zero. In other words, it is impossible for the Product to have any % DRV because it missing an essential amino acid.

47.    Defendant failed to comply with the methods of testing required in sections 5.4.1, 7.2.1, and 8.00 in "Protein Quality Evaluation, Report of the Joint FAO/WHO Expert Consultation on Protein Quality Evaluation," Rome, 1990, as required by 21 C.F.R. § 101.9(c)(7)(ii) or it complied with the methods and intentionally misreports the % DRV of protein in the Product.

**Plaintiff's Purchase of the Product & Resulting Harm.**

48.    In June 2019, Plaintiff purchased Defendant's "Physician's Choice Collagen Peptides" from Amazon.com at a cost of $25.43.

49.    The Product Plaintiff purchased included all of the label claims described previously in this Complaint, including the % DRV claim.



50.   At the time Plaintiff purchased the Product, Plaintiff believed and relied upon the representations made on Defendant's Product's label and packaging concerning the amount of protein and % DRV per serving, and Plaintiff reasonably believed the Product would provide this amount of protein per serving upon consumption of the Product.

51.   Plaintiff further relied upon Defendant's similar representations on Amazon.com in purchasing the Product.

52.   Additionally, Plaintiff visited Defendant's website before purchasing the Product and relied upon its content in choosing the Product.

53.   As the manufacturer and seller of the Product, JB7 is responsible for the accuracy of information conveyed on the Product label.

54.   Plaintiff reasonably believed that the Product would provide the advertised benefits regarding the Product's protein.

55.   Because the Product lacks a key essential amino acid, it is incapable of providing the benefits as advertised and as stated on the label.

56.   Defendant knew, or in the exercise of reasonable care, should have known that the Product's label and advertising materials were false and misleading.

57.   JB7 intended for consumers to rely upon its representations concerning the percent of Daily Value of protein the Product provides.

58.   It would be reasonable for consumers to rely—as Plaintiff did—upon JB7's representations concerning the percent of Daily Value of protein the Product provides and to believe—as Plaintiff did—that the Product provided the stated percent of Daily Value of protein.

59.   JB7's representations concerning the percent of Daily Value of protein the Product provides were made with the intent to generate and increase sales of the Product.

60.   JB7's representations concerning the percent of Daily Value of protein the Product provides were deceptive and misleading for the reasons set forth in this Complaint.

61.   By representing the percent of Daily Value of protein the Product purportedly provides, JB7 implicitly represented the Product's value to Plaintiff and other consumers.

62.   Because that representation is false, Plaintiff and other consumers received a product of different and substantially lesser value—one with a higher effective cost—than JB7 represented.

63.   Accordingly, Plaintiff and the Class did not realize the benefit of the bargain and their expectations were not met.[16]

64.   In addition, Plaintiff and the Class paid substantially more than the market value represented by the price bargained for. Plaintiff and the Class bargained with JB7 on a particular market value for a product purporting to provide 12% of the Daily Value of protein. But because the Product does not provide 12% of the Daily Value of protein, Plaintiff and the Class effectively paid a higher price than that reflected in the market price to which they and JB7 had agreed, and they received a Product that was of less value than JB7 promised.

_____

[16] Throughout this Section Plaintiff refers to the National Class and Florida Subclass collectively as "the Class."

65.    For these reasons, the Products are worth less than Plaintiff and the Class paid for them.

66.    Thus, through the use of misleading representations as to quality and benefits of the Product—and thereby the Product's value—JB7 obtained enhanced negotiating leverage allowing it to command a price Plaintiff and the Class would not have paid had they been fully informed.

67.    The Product's costs would have been lower absent the false and misleading representations.

68.    Absent the false and misleading representations, Plaintiff and the Class would only have been willing to pay less for the Products or they would have purchased other products instead.

69.    By use of its misleading marketing and labeling, JB7 created increased market demand for the Product and increased its market share relative to what its demand and share would have been had JB7 marketed and labeled the Products truthfully.

70.    Plaintiff and the Class lost money as a result of JB7's misrepresentations in that they did not receive what they reasonably believed they were paying for based upon the misrepresentations.

71.    Plaintiff and the Class detrimentally altered their position and suffered damages as a result of JB7's misrepresentations.

72.    Had Plaintiff been aware that the Product did not contain 12% the Daily Value of protein, Plaintiff would have paid less for it, or would have purchased a different product. In other words, Plaintiff would not have purchased the Product but for the representations on the Product label and related advertising.

73.   As a result of Defendant's false and misleading statements and failure to disclose (or adequately disclose) the percent of Daily Value of protein provided by the Product, Plaintiff and other consumers purchased thousands, if not tens or hundreds of thousands, of units of the Product, and have suffered, and continue to suffer, injury in fact.

74.   This action seeks, among other things, equitable and injunctive relief, restitution of all amounts illegally obtained, and disgorgement of any and all ill-gotten gains as a result of the misconduct described herein.

## CLASS ACTION ALLEGATIONS

75.   Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of a proposed class defined as follows:

**The National Class.** All persons within the United States who purchased the Product within four years prior to the filing of this Complaint.

**The Florida Subclass.** All persons within the State of Florida who purchased the Product within four years prior to the filing of this Complaint.

76.   Excluded from the National Class and Florida Subclass are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person who timely and properly excludes himself or herself from the Class.

77.   Plaintiff reserves the right to alter the Class definitions as necessary at any time to the full extent permitted by applicable law.

78.   Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as individual Class members would use to prove those elements in individual actions alleging the same claims.

79.   **Numerosity – Rule 23(a)(1):** The size of the Class is so large that joinder of all Class members is impracticable. The Product is listed as a "Best Seller" on Amazon.com and has nearly 4,500 reviews. Plaintiff believes and avers there are tens of thousands of Class members geographically dispersed throughout the United States.

80.   **Existence and Predominance of Common Questions of Law and Fact – Rule 23(a)(2), (b)(3):** There are questions of law and fact common to the Class. These questions predominate over any questions that affect only individual Class members. Common legal and factual questions/ issues include but are not limited to:

a.   the composition, protein content and percent of Daily Value of protein provided by the Product;

b.   whether Defendant properly calculated the percent of Daily Value of protein;

c.   what representations Defendant made regarding the percent of Daily Value of protein;

d.   whether Defendant intended for consumers to rely upon its representations regarding the percent of Daily Value of protein;

e.   whether Defendant's representations regarding the percent of Daily Value of protein were material to reasonable consumers;

f.   whether reasonable consumers would believe the Defendant's representations regarding the percent of Daily Value of protein;

g.   whether Defendant knew or should have known its representations were misleading in light of a–f. above;

h.   whether Defendant's conduct constitutes deceptive and unfair trade practices;

i.   the proper amount of damages and disgorgement or restitution;

j.   the proper scope of injunctive relief;

k.   the proper amount of attorneys' fees.

81.   Defendant engaged in a common course of conduct in contravention of the laws Plaintiff seeks to enforce individually and on behalf of the Class and Subclass. Similar or identical violations of law, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate this action. The common questions will yield common answers that will substantially advance the resolution of the case.

82.   In short, these common questions of fact and law predominate over questions that affect only individual Class members.

83.   **Typicality – Rule 23(a)(3):** Plaintiff's claims are typical of the claims of the Class and Subclass members because they are based on the same underlying facts, events and circumstances relating to JB7's conduct. Specifically, all Class and Subclass members, including Plaintiff, were harmed in the same way due to Defendant's uniform misconduct described herein; all Class and Subclass members suffered similar economic injury due to Defendant's misrepresentations; and Plaintiff seeks the same relief as the Class and Subclass members.

84.   There are no defenses available to Defendant that are unique to the named Plaintiff.

85. **Adequacy of Representation – Rule 23(a)(4):** Plaintiff is a fair and adequate representative of the Class because Plaintiff's interests do not conflict with the Class members' interests. Plaintiff will prosecute this action vigorously and is highly motivated to seek redress against Defendant. Furthermore, Plaintiff has selected competent counsel who are experienced in class action and other complex litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the resources to do so.

86. **Superiority – Rule 23(b)(3):** The class action mechanism is superior to other available means for the fair and efficient adjudication of this controversy for at least the following reasons:

    a. the damages individual Class and Subclass members suffered are small compared to the burden and expense of individual prosecution of the complex and extensive litigation needed to address Defendant's conduct such that it would be virtually impossible for the Class and Subclass members individually to redress the wrongs done to them and they would have little incentive to do so given the amount of damage each member has suffered when weighed against the costs and burdens of litigation;

    b. the class procedure presents fewer management difficulties than individual litigation and provides the benefits of single adjudication, economies of scale, and supervision by a single court;

    c. the prosecution of separate actions by individual Class and Subclass members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Defendant; and

    d. the prosecution of separate actions by individual Class and Subclass members would create a risk of adjudications with respect

to them that would be dispositive of the interests of other Class or
Subclass members or would substantively impair or impede their
ability to protect their interests.

87.   Unless the Class and Subclass are certified, Defendant will retain
monies received as a result of Defendant's unlawful and deceptive conduct
alleged herein.

88.   Unless a class-wide injunction is issued, Defendant will likely
continue to, or allow its resellers to, advertise, market, promote, and sell the
Product in an unlawful and misleading manner, as described throughout this
Complaint, and members of the Class and Subclass will continue to be
misled, harmed, and denied their rights under the law.

89.   **Ascertainability.** To the extent ascertainability is required, the
Class and Subclass members are readily ascertainable from Defendant's
records and/or Defendant's agent's records of retail and online sales, as well
as through public notice.

90.   JB7 has acted on grounds applicable to the Class and Subclass as a
whole, thereby making appropriate final injunctive and declaratory relief
concerning the Class and Subclass as a whole.

## COUNT 1

### VIOLATION OF FLORIDA'S UNFAIR &
### DECEPTIVE TRADE PRACTICES ACT (FDUTPA)
### (On Behalf of the Florida Subclass)

91.   Plaintiff realleges and incorporates by reference the foregoing
allegations.

92.   Defendant has engaged in deceptive acts and unfair practices that
have caused actual damages to Plaintiff and the Florida Subclass.

93.   Section 501.204(1), *Florida Statutes*, prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

94.   Selling and distributing, the Product into interstate commerce are "consumer transaction[s]" within the meaning and scope of FDUPTA.

95.   Plaintiff and the Florida Subclass members are "consumers" as defined by § 501.203, *Florida Statutes.*

96.   The Product is a good within the meaning and scope of FDUTPA and Defendant has engaged in trade or commerce within the meaning and scope of FDUTPA in connection with the sale and distribution of the Product.

97.   In the course of such conduct, Defendant violated FDUTPA by engaging in the deceptive acts and unfair practices described above and incorporated into this count, which offend established public policy, are substantially injurious to consumers, and are unscrupulous, oppressive, unethical, or immoral.

98.   Defendant's mischaracterization of the percent of Daily Value of protein in its marketing and labeling of the Product constitutes a representation, omission, and practice that is likely to mislead reasonable consumers and which, in fact, did mislead reasonable consumers including Plaintiff and the Florida Subclass members, thereby causing them loss.

99.   An objectively reasonable person would have been deceived by Defendant's representations, omissions, and practices.

100.   Plaintiff and the Florida Subclass members have sustained actual damages as a direct and proximate result of Defendant's violative

representations, omissions, and practices, including but not limited to the economic harms described above in ¶¶ 61-73 above.

101.   Plaintiff and the Florida Subclass members have been aggrieved by Defendant's violative representations, omissions, and practices and their rights have been adversely affected and, therefore, Plaintiff and the Florida Subclass are entitled to injunctive and declaratory relief under FDUTPA.

102.   Defendant's misrepresentations are ongoing such that declaratory or injunctive relief requiring Defendant to make only truthful statements in its marketing and labeling of the Product would its ongoing violations of FDUTPA and the ongoing harms caused by those violations.

103.   Plaintiff, individually and on behalf of the Florida Subclass, seeks:

a.     a declaration or declaratory judgment that Defendant's acts and practices have violated and continue to violate FDUTPA;

b.     an order enjoining Defendant to refrain from the acts and practices that have violated and continue to violate FDUTPA, including an order requiring Defendant to cease claiming in its marketing and labeling of the Product that the Product provides any percent of the Daily Value of protein;

c.     actual damages;

d.     attorney's fees and court costs; and

e.     any other legal or equitable relief to which Plaintiff or the Florida Subclass members may be entitled.

## COUNT 2

### VIOLATION OF VARIOUS STATE LAWS PROHIBITING UNFAIR & DECEPTIVE TRADE PRACTICES
### (On Behalf of the National Class)

104.   Plaintiff realleges and incorporates by reference ¶¶ 1-90 above

105.   Plaintiff's claims under FDUTPA are materially identical claims available to National Class members under the laws of the 50 states and Washington, D.C., which are amenable to further subclass treatment.

106.   Plaintiff accordingly brings this claim for deceptive acts and practices in violation of various states' consumer protection statutes against Defendant on behalf of the National Class.

107.   Defendant has engaged in deceptive acts and unfair practices as described in this Complaint and those acts and practices have caused actual damage to Plaintiff and the National Class, as described herein.

108.   Defendant's deceptive and unfair trade practices have been carried out in the course of conducting Defendant's business, trade and commerce.

109.   Defendant's acts—including its efforts to mislead consumers regarding the percent of Daily Value of protein provided by the Product—are willful, unfair, unconscionable, deceptive, contrary to public policy and injurious to consumers.

110.   Defendant's acts and practices—including its false, deceptive, and misleading statements and omissions in the marketing and labeling of the Product—would be material to any reasonable consumer's decision whether to buy the Product.

111.   Any objectively reasonable consumer acting reasonably in the circumstances would have been deceived and misled by Defendant's acts and

practices including its false, deceptive, and misleading statements and omissions in the marketing and labeling of the Product.

112.   Defendant's acts and practices are unconscionable and actuated by bad faith, lack of fair dealing, actual malice, are accompanied by a wanton and willful disregard for consumers' well-being, and are motivated solely by the desire for financial gain.

113.   As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and the National Class have sustained actual damages including but not limited to those described in ¶¶ 61-73 above.

114.   Plaintiff and the National Class demand damages, attorneys' fees and costs, and any other equitable and legal relief to which they may be entitled.

115.   Such laws may include, but are not limited to: Ala. Code § 8-19-1 *et seq.*; Alaska Stat. § 45.50.471 *et seq.*; Ariz. Rev. Stat. Ann. § 44-1521 *et seq.*; Ark. Code Ann. § 4-88-101 *et seq.*; Cal. Civil Code § 1750 *et seq.* and Cal. Bus. & Prof. Code § 17200 *et seq.*; Colo. Rev. Stat. § 6-1-101 *et seq.*; Conn. Gen. Stat. § 42-110a *et seq.*; Del. Code Ann. tit. 6 § 2511 *et seq.* & 2580 *et seq.*; D.C. Code Ann. § 28-3901 *et seq.*; Fla. Stat. § 501.201 *et seq.*; Ga. Code Ann. § 10-1-390 *et seq.*; Haw. Rev. Stat. § 480-1 *et seq.*; Idaho Code Ann. § 48-601 *et seq.*; 815 Ill. Comp. Stat. 505/1 *et seq.*; Ind. Code Ann. § 24-5-0.5-1 *et seq.*; Iowa Code § 714.16 *et seq.*; Kan. Stat. Ann. § 50-623 *et seq.*; Ky. Rev. Stat. Ann. § 367.110 *et seq.*; La. Rev. Stat. Ann. § 51:1401 *et seq.*; Me. Rev. Stat. Ann tit. 5, § 205-A *et seq.*; Md. Code Ann., Com. Law § 13-101 *et seq.*; Mass. Gen. Laws ch. 93A, § 1 *et seq.*; Mich. Comp. Laws § 445.901 *et seq.*; Minn. Stat. § 831 and § 325F.67 *et seq.*; Miss. Code Ann. § 75-24-1 *et seq.*; Mo. Ann. Stat. § 407.010

*et seq.*; Mont. Code Ann. § 30-14-101 *et seq.*; Neb. Rev. Stat. Ann. § 59-1601 *et seq.*; Nev. Rev. Stat. Ann. § 598.0903 *et seq.*; N.H. Rev. Stat. Ann. § 358-A:1 *et seq.*; N.J. Stat. Ann. § 56:8-1 *et seq.*; N.M. Stat. § 57-12-1 *et seq.*; N.Y. Gen. Bus. Law § 349 *et seq.* and § 350 *et seq.*; N.C. Gen. Stat. § 75-1.1 *et seq.*; N.D. Cent. Code § 51-12-01 *et seq.* and § 51-15-01 *et seq.*; Ohio Rev. Code Ann. § 1345.01 *et seq.*; Okla Stat. tit. 15, § 751 *et seq.*; Or. Rev. Stat. § 646.605 *et seq.*; 73 Pa. Stat. Ann. §§ 201-1 *et seq.*; R.I. Gen. Laws §§ 6-13.1-1 *et seq.*; S.C. Code Ann. § 39-5-10 *et seq.*; S.D. Codified Laws § 37-24-1 *et seq.*; Tenn. Code Ann. § 47-18-1091 *et seq.*; Tex. Bus. & Com. Code Ann. § 17.41 *et seq.*; Utah Code Ann. § 13-11-1 *et seq.*; Vt. Stat. Ann. tit. 9, § 2451 *et seq.*; Va. Code Ann. §§ 59.1-196 *et seq.*; Wash Rev. Code § 19.86.010 *et seq.*; W. Va. Code § 46A-6-101 *et seq.*; Wis. Stat. § 100.18 *et seq.*; and Wyo. Stat. Ann. §§ 40-12-101 *et seq.*

116.  Defendant's deceptive and unfair acts and practices are ongoing and may be expected to continue into the future absent relief.

117.  Plaintiff, individually and on behalf of the National Class, seeks:

a.  a declaration or declaratory judgment that Defendant's acts and practices have violated and continue to the laws of the various states;

b.  an order enjoining Defendant to refrain from the acts and practices that have violated and continue to violate the deceptive and unfair trade practices acts of the various states, including an order requiring Defendant to cease claiming in its marketing and labeling of the Product that the Product provides any percent of the Daily Value of protein;

c.      actual damages;

d.      attorney's fees and court costs; and

e.      any other legal or equitable relief to which Plaintiff or the
National Class members may be entitled.

### COUNT 3

**UNJUST ENRICHMENT**
**(On Behalf of the National Class & Florida Subclass)**

118.   Plaintiff realleges and incorporates by reference ¶¶ 1-90 above

119.   The law of the 50 states and Washington, D.C., does not differ
materially as to the elements of unjust enrichment (aka quasi contract).

120.   Defendant, through its marketing and labeling of the Product,
misrepresented and deceived Plaintiff and the Class and Subclass regarding
the percent of Daily Value of protein provided by the Product.

121.   Defendant did so for the purpose of enriching itself and it in fact
enriched itself by doing so.

122.   Plaintiff and the Class and Subclass conferred a benefit on
Defendant by purchasing the Product, including an effective premium, above
the true value of the Product. Defendant appreciated, accepted, and retained
the benefit to the detriment of Plaintiff and the Class and Subclass.

123.   Defendant continues to possess monies paid by Plaintiff and the
Class and Subclass to which Defendant is not entitled.

124.   Under the circumstances it would be inequitable for Defendant to
retain the benefit conferred upon it and Defendant's retention of the benefit
violates fundamental principles of justice, equity, and good conscience.

125.   Plaintiff, individually and on behalf of the Class and Subclass members seeks disgorgement of Defendant's ill-gotten gains. Plaintiff and the Class and Subclass seek the disgorgement and restitution of Defendant's wrongful profits, revenue, and benefits, to the extent, and in the amount, deemed appropriate by the Court, and such other relief as the Court deems just and proper to remedy Defendant's unjust enrichment.

## GLOBAL PRAYER FOR RELIEF

126.   WHEREFORE, Plaintiff respectfully requests the Court grant the following relief against Defendant:

a.   that this action be certified as a class action; that Plaintiff be appointed as class representative for the National Class and Florida Subclass; and that the undersigned be appointed as class counsel for the National Class and Florida Subclass;

b.   that the Court enter an order requiring Defendant to bear the costs of notification to the Class and Subclass members;

c.   that the Court enter a declaration or declaratory judgment that Defendant's acts and practices have violated and continue to violate FDUTPA and the laws of the various states cited herein;

d.   that the Court enter an order enjoining Defendant to refrain from the acts and practices described herein, including its marketing and labeling claims pertaining to the Daily Value of protein;

e.   that the Court enter an order requiring imposition of a constructive trust and and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and all members of the Class and Subclass to restore to the Plaintiff and members of the Class and Subclass all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or

unfair business act or practice, in violation of laws, statutes or regulations, or one constituting unfair competition;

f.  that the Court distribute monies via fluid recovery or *cy pres* where necessary to prevent Defendant from retaining the benefits of its wrongful conduct;

g.  actual damages including but not limited to compensatory, incidental, consequential, statutory, treble, and punitive damages amounts the Court or jury will determine, in accordance with applicable law;

h.  attorney's fees and court costs, including all recoverable interest;

i.  any other legal or equitable relief to which Plaintiff or the Class members or Subclass members may be entitled.

## DEMAND FOR JURY TRIAL

126.  Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all claims so triable.

Date: September 9th, 2019          Respectfully submitted,

By:  */s/ Matthew D. Schultz*
     Matthew D. Schultz (FBN 640328)
     *mschultz@levinlaw.com*
     William F. Cash, III (FBN 68443)
     *bcash@levinlaw.com*
     Brenton Goodman (FBN 126153)
     *bgoodman@levinlaw.com*
     **LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.**
     316 South Baylen Street, Suite 600
     Pensacola, Florida 32502
     Telephone: (850) 435-7140
     Facsimile: (850) 436-6140

Abbas Kazerounian (PHV forthcoming)
*ak@kazlg.com*
Ryan McBride (PHV forthcoming)
*ryan@kazlg.com*
Jason Ibey (PHV forthcoming)
*jason@kazlg.com*
Nicholas Barthel (PHV forthcoming)
*nicholas@kazlg.com*
**KAZEROUNI LAW GROUP, PLC**
245 Fischer Ave., Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Counsel for Plaintiff and the*
*Proposed Class & Subclass*