UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-23748-CIV-RNS

KATRINA McLAUGHLIN, individually and
on behalf of all others similarly situated,

                                                                             CLASS ACTION

      Plaintiff,

v.

JB7, LLC,

      Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT**

Defendant, JB7, LLC ("JB7"), pursuant to Fed. R. Civ. P. 12(b), moves to dismiss the Class Action Complaint filed by Plaintiff, Katrina McLaughlin ("McLaughlin"), and states:

**INTRODUCTION**

McLaughlin files this class action lawsuit alleging that JB7 misrepresented the daily value percentage of protein of its Physician's Choice Collagen Peptides (the "Product"). But her jurisdictional allegations fall short of what is required to establish this Court's long-arm personal jurisdiction over JB7. McLaughlin's jurisdictional allegations are both conclusory and largely untrue. JB7 does not sell the Product through sales representatives or retailers in Florida or anywhere else. Rather, JB7 sells 99% of its Product through Amazon.com, placing no geographical limits or directives on Amazon as to where the Product may be sold. The remaining 1% in sales come through JB7's own ecommerce website, which also contains no geographical limits.

JB7 is a small Colorado company based entirely in Colorado. It engages in no Florida-specific or Florida-targeted advertising or marketing. As a result, the percentage of total revenues that JB7 garners from Florida customers resembles the percentage of Florida's population in the U.S.

On these facts and the others set forth below, there is insufficient minimum contacts to establish long-arm personal jurisdiction over JB7. Merely placing the Product into the stream of commerce without any concerted or specific effort to advertise, market or sell in Florida does not create jurisdiction. *See Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County*, 480 U.S. 102, 112 (1987). As the cases cited below by JB7 show, this general precept applies within the ecommerce context. *See, e.g.*, *Evans v. Andy & Evan Indus., Inc.*, No. 15-CV-61013, 2016 WL 8787062, at *5 (S.D. Fla. July 15, 2016); *Estate of Fraser v. Smith*, No. 04-CV-22191, 2007 WL 5007084, at *8 (S.D. Fla. Nov. 13, 2007).

In addition to the issue of personal jurisdiction, McLaughlin lacks standing to assert claims on behalf of putative class members arising from other states' statutes. *See In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1325 (S.D. Fla. 2010). Thus, Count II and the portion of Count III that asserts claims on behalf out-of-state class members, based upon consumer protection statutes in states other than Florida, must be dismissed.

Finally, McLaughlin's allegations of past injury do not support her standing to sue for injunctive relief. Because she knows about the alleged labeling issue and shows no interest in purchasing the product again, the portions of her Complaint seeking injunctive relief must be dismissed. *See Herazo v. Whole Foods Market, Inc.*, No. 14-61909-CIV, 2015 WL 4514510, at *3 (S.D. Fla. July 24, 2015).

LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 South Biscayne Boulevard, 22nd Floor, Citigroup Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789

CASE NO.: 19-23748-CIV-RNS

## JURISDICTIONAL FACTS

JB7 is incorporated under the laws of Colorado and has its principal place of business in Westminster, Colorado.  (*See* Chierotti Decl. ¶ 2).[1]  JB7 is not registered to do business in Florida and does not have an agent for service of process in Florida.  (*See id.* ¶ 3).  JB7 does not have any offices, employees, agents or bank accounts in Florida.  (*See id.* ¶ 4).  JB7 does not own or rent real or personal property in Florida and has no ownership interest in any company or entity in Florida.  (*See id.* ¶ 5).

Furthermore, JB7 did not design, manufacture or label the subject product, Physician's Choice Collagen Peptides (the "Product"), in Florida.  (*See id.* ¶ 7).  JB7 used a California-based company, Lief Labs, to manufacture, bottle and label the product in California.  (*See id.* ¶ 8).  The content found in the "Supplement Facts" portion of the label was calculated and provided by Lief Labs without input from JB7, which relied on Lief Labs to create that portion of the label.  (*See id.*).

JB7 began selling the Product on June 21, 2018.  (*See id.* ¶ 9).  Since then, more than 99% of the Product's sales have been made through a third-party ecommerce website, Amazon.com.  (*See id.* ¶ 11).  There is no geographical limit to where Amazon may market, sell or distribute the Product.  (*See id.*).  And JB7 does not control when, where or to whom the products are sold or distributed by Amazon.  (*See id.*).  The remaining 1% of sales have occurred through JB7's own website, which is hosted by the ecommerce company Shopify.  (*See id.* ¶ 12).  JB7 does not direct sales of the Product into Florida.  (*See id.* ¶ 10).  Through October 3, 2019, about 8.30% of total Product revenues came from sales to Florida customers.  (*See id.* ¶ 13).

---

[1]     The Declaration of JB7's Chief Operating Officer, Logan Chierotti, is attached hereto as **Exhibit A**.

JB7 does not sell to or through retailers in Florida (or anywhere else). (*See id.* ¶ 14). JB7 does not sell through distributors or distributorship arrangements in Florida or elsewhere (*See id.* ¶ 15).

JB7 does not advertise or market directly into Florida, either through sales representatives or other means. (*See id.* ¶ 16). JB7 neither directs its advertisements toward Florida-specific publications or advertising outlets nor specifically targets Florida consumers. (*See id.* ¶ 17). JB7's marketing consists of emails sent to past customers regardless of location, and through social media that is not targeted to Florida. (*See id.* ¶ 18). JB7's advertising and marketing efforts do not target residents of a specific state through geographically-restricted online ads or otherwise. (*See id.* ¶ 19).

## MEMORANDUM OF LAW

### A.     This Court Lacks Personal Jurisdiction Over JB7

The Court should dismiss Plaintiff's lawsuit for lack of personal jurisdiction over JB7. A plaintiff bears the burden of establishing personal jurisdiction over a defendant. *See In re Arbitration Between Johns and Taramita, Inc.*, 132 F. Supp. 2d 1021, 1029 n.10 (S.D. Fla. 2001) (citing *S & Davis Int'l, Inc. v. Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000)). Under the Supreme Court of Florida's two-pronged test for determining long-arm jurisdiction over a foreign defendant like JB7, a plaintiff must (i) plead sufficient jurisdictional facts and (ii) demonstrate sufficient minimum contacts to satisfy due process requirements. *See Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). Neither prong is met in this case.

### 1.     The Complaint Fails to Allege Sufficient Jurisdictional Facts

"[V]ague and conclusory allegations are wholly insufficient to establish personal jurisdiction . . . under Florida's long-arm statute." *Accurate Ins. Group, Corp. v. Accurate Ins.*

*Services Inc.*, No. 14-CV-22381, 2015 WL 11233072, at *2 (S.D. Fla. Mar. 2, 2015); *see also Shipping & Transit, LLC v. WOV, LLC*, No. 16-CV-80860, 2016 WL 5338078, at *5 (S.D. Fla. Sept. 23, 2016) (dismissing complaint where plaintiff failed to provide factual support regarding defendant's interaction with the forum state).

Here, McLaughlin alleges only that JB7: "conducts substantial business within the State" (Compl. ¶ 22); "directed the product through the stream of commerce" by advertising and marketing within Florida through sales representatives, its own ecommerce website and a third-party website (*id.* ¶ 23); and "sold the Product to retailers" in the State (*id.* ¶ 25). These conclusory jurisdictional allegations, without more, do not present a prima facie case of personal jurisdiction over JB7.

### 2. McLaughlin Does Not and Cannot Demonstrate Sufficient Minimum Contacts Between JB7 and Florida

Even if McLaughlin had pled sufficient allegations of personal jurisdiction in satisfaction of the first prong of long-arm jurisdiction, the *facts* as set forth in the Chierotti Declaration undermine the second prong: whether JB7 has sufficient minimum contacts with Florida. To establish sufficient minimum contacts, a plaintiff must show that the non-resident defendant "is engaged in substantial and not isolated activity within this state." *See* Fla. Stat. § 48.193(2). Florida courts have interpreted "substantial and not isolated activity" to mean "'continuous and systematic general business contact' with Florida." *Bulpit, LLC v. DeCanio*, No. 13-CV-14119, 2013 WL 12126313, at *3 (S.D. Fla. June 7, 2013). This is a high threshold — so high that if it is met, the constitutional due process requirement of "minimum contacts" is also met. *See Mold-Ex, Inc. v. Mich. Technical Representatives, Inc.*, No. 04-CV-307, 2005 WL 2416824, at *4 (N.D. Fla. Sept. 30, 2005).

Here, JB7 is not registered to do business in Florida and has no agent for service of process in Florida. (Chierotti Decl. ¶ 3). JB7 has no offices, employees, sales representatives or bank accounts in Florida. (*See id.* ¶ 4). JB7 does not own or rent real or personal property in Florida. (*See id.* ¶ 5). It has no ownership interest in any company or entity in Florida. (*See id.*). JB7's business activities are centered in Colorado, where JB7 is incorporated and maintains its principal place of business. (*See id.* ¶ 2).

Moreover, McLaughlin's jurisdictional allegations are largely untrue. JB7 does not advertise or market directly into Florida, either through sales representatives or other means. (Chierotti Decl. ¶ 16). JB7 does not sell to or through retailers in Florida (or anywhere else). (*See id.* ¶ 14). JB7 does not sell through distributors or distributorship arrangements in Florida or elsewhere. (*See id.* ¶ 15). Rather, JB7 markets and sells the Product nationwide through Amazon.com and JB7's own Shopify website. (*See id.* ¶¶ 11-12). The Product sold through Shopify is shipped to consumers from Illinois. (*See id.* ¶ 12).

Indeed, McLaughlin herself purchased the Product through Amazon.com. (Compl. ¶ 48). The mere fact that JB7 directed the Product through the stream of commerce via a third-party e-commerce website is not enough to confer jurisdiction over JB7, particularly where, as here (*see* Chierotti Decl. ¶ 11), there is no geographical limit to where Amazon may market, sell or distribute the Product. *See Asahi*, 480 U.S. at 112 ("[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State."); *Evans*, 2016 WL 8787062, at *5 (holding that purposeful availment was not established on the basis of Amazon sales because defendant did not limit where the product could be sold and did not care where the product was sold); *see also Performance Indus. Mfg., Inc. v. Vortex*

*Performance Pty Ltd.*, No. 18-CV-00510-T-02AAS, 2019 WL 78840, at *6 (M.D. Fla. Jan. 2, 2019) ("[I]t is not enough that, through distributors or other channels, [defendant's] products might have found their way to Florida."); *George & Co. LLC v. Spin Master Corp.*, No. 18-CV-154-FTM-38MRM, 2018 WL 6817022, at *4 (M.D. Fla. Dec. 27, 2018) (stating that neither the Supreme Court nor the Eleventh Circuit has found that merely placing a product into the stream of commerce satisfies the purposeful availment requirement). JB7 did not direct the Product into Florida. (Chierotti Decl. ¶ 10). Rather, JB7 sold it to the nation's largest ecommerce website, Amazon, to sell throughout the country. (*See id.* ¶ 11). This does not confer personal jurisdiction.

Nor does JB7's operation of its own generally accessible Shopify website constitute conducting or carrying on business in Florida. *See Dynetech Corp. v. Leonard Fitness, Inc.*, 523 F. Supp. 2d 1344, 1347 (M.D. Fla. 2007) ("[T]he Internet does not provide cause to abandon traditional principles guiding the personal jurisdiction analysis.") (citation omitted). "To hold otherwise would imply that defendants who maintain a website with nationwide access could submit themselves to jurisdiction anywhere in the country, which would violate traditional notions of fair play and substantial justice." *Neelu Aviation, LLC v. Boca Aircraft Maint., LLC*, No. 18-CV-81445, 2019 WL 3532024, at *12 (S.D. Fla. Aug. 2, 2019); *see also Shipping & Transit, LLC*, 2016 WL 5338078, at *3 ("A defendant's website alone does not establish general jurisdiction when it is not specifically directed at the forum state, but instead is available to all customers throughout the country who have access to the Internet.") (citation omitted); *Estate of Fraser*, 2007 WL 5007084, at *8 ("[F]or personal jurisdiction to be based on a website — even an interactive one — it must be shown that the owner of the website manifestly intended to target citizens of the forum state.").

Thus, JB7's exclusive use of ecommerce websites does not show that JB7 "purposely directed" activities to Florida, "but instead indiscriminately targeted any individual with an internet connection regardless of their state of residence." *See Freedom Mentor, LLC v. Saeger*, No. 18-CV-1235, 2019 WL 313788, at *3 (M.D. Fla. Jan. 24, 2019).

While it is true that Florida customers buy the Product, the percentage of revenue generated by JB7 customers amounts to 8.30% of JB7's total sales — roughly equal to Florida's 6.38% share of the U.S. population.[2] (Chierotti Decl. at ¶ 13). This percentage of sales does not establish substantial contacts, particularly given that JB7 has no other ties to Florida. *See Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1362 (5th Cir. 1990) (contacts with Louisiana did not rise to the level of continuous and systematic where overall revenue gleaned from Louisiana amounted to 12.9%); *RG Golf Warehouse, Inc. v. Golf Warehouse, Inc.*, 362 F. Supp. 3d 1226, 1236 (M.D. Fla. 2019) (finding 7% of sales to Florida consumers was insufficient to confer jurisdiction, despite the fact that defendant operated an interactive website that was accessed daily by potential and actual Florida customers); *L.H. Carbide Corp. v. Piece Maker Co.*, 852 F. Supp. 1425, 1435 (N.D. Ind. 1994) (finding 8% of non-resident defendant's national sales in forum state was insignificant).

Moreover, although JB7 markets and advertises the Product nationwide, none of its marketing or advertising is directed to Florida consumers or any other geographically specific area. (Chierotti Decl. at ¶¶ 16-17). Thus, JB7's marketing and advertising efforts to not subject it to Florida jurisdiction. *See Neelu Aviation*, 2019 WL 3532024, at *12 (finding defendant's nationwide advertising, including Florida, "insufficient to establish general or specific jurisdiction"); *Lawson Cattle & Equip., Inc. v. Pasture Renovators LLC*, No. 604-CV-211-ORL-

---

[2] *See* https://www.civicdashboards.com/state/florida-04000US12/percent_of_us_population

22JGG, 2004 WL 5570662, at *6 (M.D. Fla. Aug. 20, 2004) ("Since the aforementioned advertisements were not specifically directed at Florida, this Court finds that they do not subject [defendant] to personal jurisdiction in this State.").

This includes JB7's email broadcasts to its nationwide customer email list. In *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014), the Seventh Circuit addressed whether general broadcasts confer personal jurisdiction in a particular state. In holding that they do not, the court stated "it is exceedingly common in today's world for a company to allow consumers to sign up for an email list. We are not prepared to hold that this alone demonstrates that a defendant made a substantial connection to each state (or country) associated with those persons' 'snail mail' addresses." *Id.* at 803. The court further noted that it would be "different if there were evidence that a defendant in some way targeted residents of a specific state, perhaps through geographically-restricted online ads." *Id.* That too did not happen here. (Chierotti Decl. at ¶¶ 18-19).

Nor does JB7's social media marketing, none of which is state-specific (*see id.* ¶ 17), subject it to jurisdiction in Florida. *See Blue Water Int'l, Inc. v. Hattrick's Irish Sports Pub, LLC*, No. 8:17-cv-1584-T-23AEP, 2017 WL 4182405, at *4 (M.D. Fla. Sept. 21, 2017) (holding that a finding of "personal jurisdiction in Florida merely because a Floridian might view the [defendant's social media] pages 'offend[s] traditional notions of fair play and substantial justice'" and would "impermissibly risk subjecting a defendant to suit throughout the United States") (quoting *Advanced Tactical Ordnance*, 751 F.3d at 803).

In sum, neither the facts nor McLaughlin's allegations provides a sufficient basis to subject JB7 to personal jurisdiction in Florida.

B.   **McLaughlin Lacks Standing to Assert Claims on Behalf of Other Class Members Based on Laws of States Other than Florida**

In Count II and a portion of Count III of her Complaint, McLaughlin seeks to bring, on behalf of a nationwide class of putative class members, claims pursuant to a list of consumer protection statutes from all 50 states and the District of Columbia. (Compl. ¶¶ 104-17). McLaughlin lacks standing to do so.

In a class action such as this, state statutory claims may only be asserted if one of the named plaintiffs resides in that state. *See In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1325 (S.D. Fla. 2010) (King, J.) (dismissing "all state statutory claims where no named plaintiff resides in the state from which the claim is asserted"); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1371-72 (S.D. Fla. 2001) (Seitz, J.) (dismissing state statutory claims because "a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to the claim") (quoting *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987)); *Renzi v. Demilec (USA) LLC*, No. 12-80516-CIV, 2013 WL 6410708, at *3 (S.D. Fla. Dec. 9, 2013) (Marra, J.) ("Plaintiffs may only assert a state statutory claim if a named plaintiff resides in that state.") (citation omitted).

Simply put, because Plaintiff resides in Florida, Plaintiff has no standing to bring claims on behalf of putative class members based on other states' consumer protection statutes. This Court should dismiss Count II of the Class Action Complaint, as well as that portion of Count III that asserts an unjust enrichment claim on behalf of a national class.

### C. McLaughlin Lacks Standing to Seek Injunctive Relief

McLaughlin's allegations of past injury do not support her standing to sue for injunctive relief. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Herazo*, 2015 WL 4514510, at *3 (Moreno, J.) (dismissing plaintiffs' claims for injunctive relief in mislabeling claim for lack of standing) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 564 (1992)).

Stated similarly in the product labeling context, "[t]here is no likelihood of injury in the future if a plaintiff has no interest in purchasing the product at issue again because it does not work or does not perform as advertised." *Id.* (quoting *Marty v. AnheuserBusch Co., LLC*, 43 F. Supp. 3d 1333, 1358 (S.D. Fla. 2014)).

Here, McLaughlin's allegations show that she now knows about the alleged labeling issues described in her Complaint. Yet she alleges only past harm, and not any threat of future individual harm. McLaughlin's requests for injunctive relief (Compl. ¶¶ 103(b), 117(b), 126(d)) must therefore be dismissed and/or stricken.

### CONCLUSION

For the foregoing reasons, Defendant, JB7, LLC, respectfully requests that this Court dismiss the Class Action Complaint, and grant such other or further relief the Court deems appropriate.

CASE NO.: 19-23748-CIV-RNS

Dated: October 17, 2019.                                  Respectfully submitted,

                                                     **LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP**
*Counsel for JB7, LLC*
Citigroup Center, 22nd Floor
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 403.8788
Facsimile: (305) 403.8789

By: /s/ Jason Kellogg
LAWRENCE A. KELLOGG, P.A.
Florida Bar No. 328601
Primary E-Mail:  lak@lklsg.com
Secondary E-Mail: ah@lklsg.com
JASON KELLOGG, P.A.
Florida Bar No. 0578401
Primary E-Mail: jk@lklsg.com
Secondary E-Mail: ah@lklsg.com
TAL ABUROS, ESQ.
Florida Bar No. 1010901
Primary E-Mail: ta@lklsg.com

## CERTIFICATE OF SERVICE

     **I HEREBY CERTIFY** that on October 17, 2019, I have filed the foregoing document with the Clerk of the Court using the CM/ECF system.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                             By:     /s/ Jason Kellogg
                                                  Jason Kellogg

CASE NO.: 19-23748-CIV-RNS

## SERVICE LIST

Matthew D. Schultz, Esq.
William F. Cash, III, Esq.
Brenton Goodman, Esq.
Levin Papantonio Thomas Mitchell
Rafferty & Proctor, P.A.
316 S. Baylen St., Suite 600
Pensacola, FL 32502
mschultz@levinlaw.com
bcash@levinlaw.com
bgoodman@levinlaw.com

Abbas Kazerounian, Esq.
Ryan McBride, Esq.
Jason Ibey, Esq.
Nicholas Barthel, Esq.
Kazerouni Law Group, PLC
245 Fischer Ave., Unit D1
Costa Mesa, CA 92626
ak@kazlg.com
ryan@kazlg.com
jason@kazlg.com
nicholas@kazlg.com

*Counsel for Plaintiff and the
Proposed Class & Subclass*

**LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP**
201 South Biscayne Boulevard, 22nd Floor, Citigroup Center, Miami, Florida 33131 · Main: 305.403.8788 · Fax: 305.403.8789